IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WILLIAM WOLF, INDIVIDUALLY AND AS THE ADMINISTRATOR OF THE ESTATE OF MARK D. WOLF, PLAINTIFFS, | §<br>§<br>§<br>§<br>§ | |
| V. | §<br>§ | CASE NO. 3:25-CV-395-S (BK) |
| CAMBRIDGE MUTUAL FIRE INSURANCE COMPANY AND COM-CO INSURANCE AGENCY, INC., DEFENDANTS. | §<br>§<br>§<br>§<br>§ | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and the district judge's *Order of Reference*, Doc. 11, Defendants' *Motion to Dismiss for Lack of Personal Jurisdiction or, Alternatively, to Transfer Venue to the Northern District of Illinois,* Doc. 8, and *Plaintiff's Second Motion to Remand*, Doc. 29, are before the undersigned United States magistrate judge for findings and a recommended disposition.  For the reasons below, *Plaintiff's Second Motion to Remand,* Doc. 29, should be **DENIED** and Defendants' motion, Doc. 8, should be **GRANTED IN PART** and this action should be transferred to the United States District Court for the Northern District of Illinois for further proceedings.

## I. BACKGROUND

### A. Factual Background[1]

This case stems from a disputed insurance claim.  In May 2022, Cambridge Mutual Fire Insurance Company ("Cambridge") issued an insurance policy to William Wolf and the Estate of Mark D. Wolf (collectively "Plaintiffs") insuring the building located at 2615 W. Greenleaf Avenue, Chicago, Illinois (the "Property") for the period from May 20, 2022, to May 20, 2023. Doc. 1-1, ¶ 6.  Com-Co Insurance Agency, Inc. ("Com-Co"), was designated as the insurance agent under the policy.  Doc. 1-1, ¶ 6; Doc. 9-3 at 9.

In June 2023, a claim was submitted to Cambridge for water damage sustained by the Property as a result of a broken water line or pipe.  Doc. 1-1, ¶ 7-8.  Thereafter, Cambridge assigned an outside adjuster to investigate the claim and evaluate the cause of the loss.  Doc. 1-1, ¶ 8-9(d), (p).  Following the investigation, Cambridge ultimately denied coverage for the Property in January 2024.  Doc. 1-1, ¶ 8.

On December 31, 2024, Plaintiffs filed suit against Cambridge and Com-Co (collectively "Defendants") in Texas state court, asserting causes of action against both Defendants for breach of contract, common law bad faith and breach of the duty of good faith and fair dealings, and violations of the Texas Insurance Code and Deceptive Trade Practices Act ("DTPA").[2] Doc. 1-1, ¶¶ 12-28.

---

[1] The factual background is taken directly from the allegations in Plaintiffs' original petition, Doc. 1-1, which, for purposes of the instant motion, are presumed true.

[2] Although Plaintiffs' petition additionally pleads "failure to investigate and mitigate" and "failure to clearly communicate policy obligations" as separate causes of action, Texas law does not recognize these as independent claims.  *See Higginbotham v. State Farm Mut. Auto. Ins. Co.,* 103 F.3d 456, 460 (5th Cir. 1997) (holding that, aside from the duty of good faith and fair

2

### B. Procedural History and Parties' Arguments

On February 17, 2025, Defendants Cambridge and Com-Co removed this action to federal court based on diversity jurisdiction under 28 U.S.C. § 1332, contending that Cambridge is a Massachusetts citizen, Com-Co is an Illinois citizen, and that Plaintiffs are Texas citizens. Doc. 1, ¶¶ 7-14. Thereafter, Plaintiffs filed their first Motion to Remand, Doc. 12, alleging that both Plaintiff William Wolf and Com-Co were citizens of Texas, and therefore, complete diversity did not exist. Doc. 12, ¶¶ 9-10. Apparently having realized that this assertion was incorrect, Plaintiffs subsequently filed an amended Certificate of Interested Persons/Disclosure Statement. Doc. 13. In the Amended Certificate, Plaintiffs conceded that Com-Co was a citizen of Illinois, but now asserted, for the first time, that Plaintiff William Wolf, in his capacity as the administrator of the Estate, was also a citizen of Illinois for purposes of diversity jurisdiction. Doc. 13 at 2-3.

To account for Plaintiffs' introduction of new facts, Defendants then sought leave to file an Amended Notice of Removal, which the Court granted as unopposed.[3] Doc. 16; Doc. 20. In the Amended Notice of Removal, Defendants argue that even if the Estate is a citizen of Illinois,

---

dealing and the limited *Stowers* duty, Texas law does not recognize an independent cause of action for negligent claims handling). Rather, such assertions are properly analyzed as theories of liability under Plaintiffs' common-law claims for breach of contract or the duty of good faith and fair dealing, or their statutory claims under the Texas Insurance Code. *Id.* Accordingly, the Court addresses these allegations within those claims rather than as stand-alone causes of action.

[3] At the time of filing, Plaintiffs had not yet responded to inquiries regarding whether they were opposed to Defendants' request for leave to file an amended notice of removal and, as such, Defendants properly marked the motion as opposed. Doc. 16; *see also*, N.D. Tex. Local Rule 7.1(b)(3) (providing that where a conference is not held, "the certificate must explain why it was not possible to confer, in which event the motion will presumed to be opposed."). However, because Plaintiffs' counsel subsequently indicated that Plaintiffs were unopposed to the request, *see* Doc. 19, the motion was granted as unopposed. Doc. 20.

complete diversity nevertheless exists because Defendant Com-Co was improperly joined. Doc. 23, ¶¶ 15-25. In response, Plaintiffs again move to remand, asserting that Com-Co is properly joined and that complete diversity is thus lacking. Doc. 29. Defendants also move to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), or, alternatively, to transfer venue under 28 U.S.C. § 1404(a). Doc. 8.

The Court first addresses Plaintiffs' Motion to Remand, Doc. 29.

## II. MOTION TO REMAND

### A. Applicable Law

Because federal courts are courts of limited jurisdiction, a defendant may only remove a civil action from state court to federal court if the action is one that could have originally been filed in federal court. *See* 28 U.S.C. § 1441(a); *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). As pertinent here, a federal court has diversity jurisdiction if the amount in controversy exceeds $75,000 and all parties are completely diverse. 28 U.S.C. § 1332. Complete diversity means "all persons on one side of the controversy must be citizens of different states than all persons on the other side." *MidCap Media Fin., L.L.C. v. Pathway Data, Inc.*, 929 F.3d 310, 313 (5th Cir. 2019) (cleaned up).

The improper joinder doctrine represents a "narrow exception" to the complete diversity requirement. *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2011) (citation omitted). To invoke the doctrine, the removing party must establish either: "(1) actual fraud in the pleading of jurisdictional facts, or (2) [the] inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc).

4

A defendant asserting improper joinder under the latter ground must demonstrate "that there is no possibility of recovery by the plaintiff against [the non-diverse] defendant.' *Id.* Stated differently, a removing party prevails where "there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against [the non-diverse] defendant." *Id.* In making this inquiry, the court focuses "on the joinder [of the non-diverse defendant], not the merits of the plaintiff's case." *Id.* The removing party's burden is "a heavy one" and the court must resolve "any contested issues of facts and any ambiguities of state law" in favor or remand. *Cuevas*, 648 F.3d at 249. If the Court finds that even one valid cause of action exists against a non-diverse defendant, the case must be remanded. *Gray ex rel. Rudd v. Beverly Enters.-Miss., Inc.*, 390 F.3d 400, 412 (5th Cir. 2004).

In making this determination, courts conduct a "Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether, under state law, the complaint states a claim against the [non-diverse] defendant." *Larroquette v. Cardinal Health 200, Inc.*, 466 F.3d 373, 376 (5th Cir. 2006) (citing *Smallwood*, 385 F.3d at 573)). Under this standard, the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks and citations omitted). To survive a Rule 12(b)(6) inquiry, a plaintiff's factual allegations "must be enough to raise a right to relief above [a] speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, (2007). Put differently, the allegations must permit a reasonable inference "that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Conclusory allegations or a formulaic recitation of the elements of a cause of action are insufficient. *Iqbal*, 556 U.S. at 679; *Twombly*, 550 U.S. at 555 (citation omitted).

## B. Analysis

### 1. The Estate is a Citizen of Illinois for Purposes of Diversity Jurisdiction.

Before reaching the improper joinder analysis, the Court must first resolve the threshold issue of the parties' citizenship.[4]

Defendants assert that Cambridge is a company organized under the laws of Massachusetts and with its principal place of business in Massachusetts. Doc. 23, ¶ 13. Thus, Cambridge is a citizen of Massachusetts for purposes of diversity jurisdiction. *See* 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."). Defendants further assert, and Plaintiffs no longer dispute, that Com-Co is incorporated in Illinois and has its principal place of business there, making it a citizen of Illinois for diversity purposes. Doc. 23, ¶ 14; Doc. 29, ¶ 10; 28 U.S.C. § 1332(c)(1).

Plaintiff William Wolf ("Wolf") brings this action both in his individual capacity, as a named beneficiary of the insurance policy, and as a representative of his brother's estate. Doc. 29 at 1. The parties do not dispute that Wolf, in his individual capacity, is a citizen of Texas for purposes of determining diversity jurisdiction. Doc. 23, ¶ 10; Doc. 29, ¶ 8; 28 U.S.C. § 1332(a). Thus, the citizenship inquiry turns solely on Wolf's citizenship in his capacity as the administrator of the Estate.

28 U.S.C. § 1332(c)(2) states, in pertinent part, that "the legal representative of the estate of the decedent shall be deemed to be a citizen only of the same State as the decedent." Here, Plaintiffs Amended Certificate of Interested Parties avers that the decedent, Mark D. Wolf,

---

[4] The parties do not dispute that the amount in controversy exceeds $75,000. Doc. 1-1, ¶ 2; Doc. 23, ¶¶ 26-30.

"lived in Illinois at the time of his death and lived in Illinois for many years prior to his death."

Doc. 13 at 3; *see Stine v. Moore*, 213 F.2d 446, 448 (5th Cir. 1954) (recognizing that an

individual is a citizen of the state in which he is domiciled, i.e., where he has a true, fixed, and

permanent home).  As such, it would appear that William Wolf, in his capacity as the

representative of the Estate, is a citizen of Illinois for purposes of diversity jurisdiction.[5]  28

U.S.C. § 1332(c)(2).

Because the Estate and Com-Co are both citizens of Illinois, the crucial issue, as raised

by Defendants in their Amended Notice of Removal, is whether Plaintiffs have improperly

joined Com-Co as a defendant in the state court action.  Doc. 23, ¶¶ 15-25.

### 2. Defendant Com-Co was Improperly Joined.

Defendants rely on the second method of establishing improper joinder, which requires

them to establish that there is "no reasonable basis for the district court to predict that the

plaintiff might be able to recover" against Com-Co on any asserted cause of action.  *Smallwood,*

385 F.3d at 573.  Defendants urge that Plaintiffs cannot recover against Com-Co because the

petition "lacks any factual allegations of any violations, wrongdoing, or activity on the part of

Com-Co" that connect the company to any alleged harm.  Doc. 23, ¶ 17.  Plaintiffs disagree,

---

[5] Although residency is not synonymous with domicile, *see Strain v. Harrelson Rubber Co.*, 742 F.2d 888, 889 (5th Cir. 1984), Defendants do not dispute the Estate's alleged citizenship and instead argue that diversity exists even assuming those allegations are true.  *See* Doc. 23, ¶ 12. Because the Court ultimately concludes that Com-Co was improperly joined, requiring Plaintiffs to replead such facts at this stage—only later to deny remand on improper joinder grounds— would undermine judicial efficiency.  Accordingly, for purposes of this analysis, the Court proceeds on the assumption that the Estate is a citizen of Illinois.

arguing that a reasonable possibility of recovery exists based on Com-Co's actions as their insurance agent.[6] Doc. 29, ¶ 13.

At the outset, the parties dispute which state's law governs Plaintiffs' claims and, consequently, which law should be applied in assessing their viability. The original petition asserts claims under Texas common law and statutory law and, as such, Plaintiffs contend that Texas law governs. Doc. 28, ¶ 44. Defendants counter that, because Plaintiff's claims arise out of an insurance policy covering Illinois property, Illinois law applies. Doc. 9, ¶¶ 46-50.

"The Fifth Circuit has not yet addressed the extent to which [a federal court] should evaluate choice-of-law issues in ruling on a motion to remand." *Michelson v. Batson*, 3:17-CV-3244, 2018 WL 10398910, at *2 (N.D. Tex. Mar. 21, 2018) (Cummings, J.). In the absence of controlling authority, at least three cases from the United States District Court for the Eastern

---

[6] Plaintiffs also argue that Defendants' assertion of improper joinder for the first time in their Amended Notice of Removal, Doc. 23, was procedurally improper and should not be considered. Doc. 29, ¶ ¶ 17-21. As Defendants point out, however, 28 U.S.C. § 1654 provides that "[d]effective allegations of jurisdiction may be amended" and the Fifth Circuit has "broadly construed" this section to permit amendment so long as it does "nothing more than state an alternative jurisdictional basis for recovery on facts previously alleged." *Whitmire v. Victus Ltd.*, 212 F.3d 885, 887 (5th Cir. 2000). Here, Defendants sought leave to amend their original notice of removal only after Plaintiffs added facts to their certificate of interest parties that destroyed complete diversity. Doc. 13; Doc. 16. The Amended Notice therefore presented nothing more than an alternative basis for diversity jurisdiction—improper joinder—based on facts already alleged in the original notice. *Whitmire,* 212 F.3d at 887. Courts in this circuit have approved such amendments under identical circumstances. *See e.g. Lone Star Fund IV(US) LP v. Lee*, No. 3:09-CV-1614, 2010 WL 1790392, at *3 (N.D. Tex. May 5, 2010) (Boyle. J.) (holding that the court could consider the defendant's "real parties in interest argument" although it was first asserted in opposition to a motion to remand where removal was originally based on diversity of citizenship); *Henry v. O'Charleys Inc.*, 861 F.Supp.2d 767, 770 (W.D. La. 2012) (allowing amendment to add improper joinder argument where removal was originally based on diversity jurisdiction and the amendment did not change the basis for removal). Accordingly, because the Court acted within the broad discretion afforded by § 1654 in granting Defendants' then-unopposed motion for leave to amend, it will proceed to consider the merits of Defendants' improper joinder argument.

District of Texas have held that the forum state's law applies in assessing whether a plaintiff has stated a viable claim against a non-diverse defendant.  *See Brode v. Foremost Ins. Co.*, No. 1:15-CV-118, 2015 WL 3622522, at \*5 (E.D. Tex. June 9, 2015) (Crone, J.) ("In assessing whether a plaintiff could possibly establish a claim against a non-diverse defendant, the court must apply the law of the state in which the action was brought—in this case, Texas."); *Brewer v. Compass Bank*, No. 4:14-CV-705, 2015 WL 7752130, at \*6 (E.D. Tex. Nov. 6, 2015) (Nowak, J.)*, rep. & rec. adopted*, 2015 WL 7756127 (E.D. Tex. Dec. 1, 2015) (same); *Cannedy v. Wells Fargo Bank, N.A.*, No. , 2016 WL 3946793, at \*3, n.5 (E.D. Tex. June 28, 2016) (Nowak, J.), *rep. & rec. adopted*, 2016 WL 3917715 (E.D. Tex. July 20, 2016)(same).  Other circuits, by contrast, permit resolution of choice-of law questions in the improper-joinder inquiry only where the choice-of-law decision is dispositive and "where the removing defendant has alleged that there is no real possibility [i.e. colorable basis] that the state court would apply the plaintiff's suggested choice of law." *Morris v. Nuzzo*, 718 F.3d 660, 672 (7th Cir. 2013) (citing *Abels v. State Farm Fire & Casualty Co.*, 770 F.2d 26 (3d Cir. 1985)).

Although Defendants present a substantial argument that Illinois law should govern the insurance contract at issue, the Court concludes that it need not resolve this delicate choice-of-law issue here.  *See Michelson*, 2018 WL 10390910, at \*2 (declining to resolve disputed choice-of-law issues where the court would reach the same conclusion regarding the plausibility of the plaintiff's claims regardless of which state's law applied).  Regardless of whether Illinois or Texas law applies, the Court finds no reasonable basis to predict that Plaintiffs could recover against Com-Co on any claim asserted in the petition.

9

i. Breach of Contract

To state a claim for breach of contract under either Illinois or Texas law, a plaintiff must allege: (1) the existence of a valid contract; (2) performance or tender of performance by plaintiff; (3) breach by the defendant; and (4) damages resulting from the breach." *Richter v. Wagner Oil Co.*, 90 S.W.3d 890, 898 (Tex. App.—San Antonio 2002, no pet.); *McClellan v. Banc Midwest, McLean Cnty.*, 517 N.E.2d 762, 764 (Ill.App.Ct.1997).

Plaintiffs base their breach of contract claim on the insurance policy, alleging that "Defendants' failure to pay the claim constitutes a breach of the policy." Doc. 1-1, ¶ 13. Although this claim is asserted against "Defendants" generally, the petition is devoid of any allegation that Com-Co entered into any contract with the Plaintiffs. *See* Doc. 1-1. To the contrary, Plaintiffs allege that Cambridge "issued insurance policy number FP24057757 naming or including Wolf as the insured and the Estate as the additional insured." Doc. 1-1 at 2. While the Policy identifies Com-Co as the insured's "independent insurance agent," the contract is between Plaintiffs, as policy holders, and Cambridge, as the issuing company. *See* Doc. 9-3 at 9. This conclusion is reinforced by Plaintiffs' allegation that the Policy was breached upon Cambridge's issuance of the denial letter. Doc. 3, ¶ 13. Although Com-Co was copied on that letter, which was signed and issued by Cambridge's claims examiner, the petition alleges no facts suggesting that Com-Co participated in, influenced, or had any role in the decision to deny the claim. *See* Doc. 1-1, ¶ 8.

"It is well settled under Texas law that an insurance agent cannot be held liable for breach of contract or breach of duty of good faith and fair dealing absent a contract giving rise to a 'special relationship' with the insured." *Vargas v. State Farm Lloyds*, 216 F. Supp. 2d 643, 647 (S.D. Tex. 2002) (citing *Griggs v. State Farm Lloyds*, 181 F.3d 694, 700 (5th Cir. 1999)).

10

Illinois law likewise requires contractual privity to sustain a breach-of-contract claim, and "[i]n an insurance policy, privity of contract exists between the insurer and the insured party." *Roberts v. Standard Ins. Co*, No. 4-C-2027, 2004 WL 2367741, at *6 (N.D. Ill. Oct. 15, 2004) (Ashman, J.) (mem op.) (citing *Copley v. Perkin Ins. Co.*, 488 N.E.2d 1004, 1008 (Ill.1986)).

Even when liberally construed, Plaintiffs' allegations fail to identify any special relationship under which Com-Co owed a duty to Plaintiffs.  In the absence of such duty, there is no reasonable basis to predict recovery against Com-Co for breach of contract under either Texas or Illinois law.

## ii. Breach of the Duty of Good Faith and Fair Dealing

For the same reasons, Plaintiffs cannot maintain claims for bad faith or breach of the duty of good faith and fair dealing against Com-Co.  Plaintiffs allege that "Defendants refusal to pay the claim under the Policy was in bad faith," and that "Defendants engaged in subterfuge, made multiple misrepresentations, and failed to conduct a reasonable investigation."[7] Doc. 1-1, ¶ 15. Once again, however, they fail to allege how their relationship with Com-Co gave rise to any duty to conduct these activities in good faith.

Under Texas law, a contract giving rise to a special relationship is a "necessary element of the duty of good faith and fair dealing." *Cavallini v. State Farm Mutual Auto Ins. Co.,* 44 F.3d 256, 259 (5th Cir. 1995) (internal quotations omitted).  Similarly, under Illinois law, courts have consistently refused to recognize an independent tort for breach of the implied duty of good faith and fair dealing, which exists only within the contractual relationship between the parties.

---

[7] Although Plaintiffs appear to assert separate claims for bad faith and for breach of the duty of good faith and fair dealing, the factual allegations supporting each are essentially identical. *Compare,* Doc. 1-1, ¶ 15, *with*, Doc. 1-1, ¶ 17.  Accordingly, the Court treats these as a single claim for purposes of the improper joinder inquiry.

*See Voyles v. Sandia Mortg. Corp.*, 751 N.E.2d 1126, 1130-31 (Ill. 2001) (explaining that, except for cases where an insurer breaches its duty to settle an action brought against the insured by a third party, appellate courts "had consistently refused to recognize an independent tort for breach of the implied duty of good faith and fair dealing in a contract."); *MDFC Loan Corp. v. First Shopping Ctr. P'ship*, No. 93-C-4481, 1996 WL 99909, at *2 (N.D. Ill. Mar. 1, 1996) (noting that under Illinois law, the duty of good faith is a directive measure that guides the construction of the contract and thus may be applied to relieve a non-breaching party from its contractual obligations to a breaching party). Because the contractual relationship exists only between Cambridge and Plaintiffs, and Plaintiffs allege no special relationship with Com-Co, there is no reasonable basis under either Texas or Illinois law to sustain a claim against Com-Co for breach of the duty of good faith and fair dealing.

Nor is there any basis to conclude that Com-Co owed an independent duty to investigate Plaintiffs' claims, mitigate delays, or clearly communicate policy obligations. Plaintiffs broadly allege that "Defendants failed to adequately explain its demands for documentation and policy obligations," and that Defendants "requests for irrelevant documentation prolonged the process," but these allegations again appear to relate to actions taken solely by Cambridge. *See* Doc. 1-1, ¶¶ 26-28. Indeed, the petition specifically alleges that Cambridge and its adjuster "continuously refused to communicate with Wolf, the only representative of the Estate." Doc. 1-1, ¶ 9(p). Accordingly, even if these allegations could support independent claims, Plaintiffs have failed to allege any conduct by Com-Co that would permit recovery against it.

### iii. Texas Insurance Code and Deceptive Trade Practices

Finally, Plaintiffs maintain that they have alleged viable claims against Com-Co under both Chapters 541 and 542 of the Texas Insurance Code and section 541.151 of the Deceptive

Trade Practices Act ("DPTA").  Although an agent generally cannot be held liable for duties arising from the insurance contract itself, Texas law permits individual liability against agents, brokers, and adjusters who commit statutory violations of the Texas Insurance Code or the DTPA.  *See Jones v. Allstate Insurance Co.*, No. 2014 WL 415951, at *4 (N.D. Tex. Feb. 4, 2014) (Horan, J.) (mem. op) (observing that "Section 541.002(2) of the Texas Insurance Code makes clear that 'an agent, broker, adjuster, or life and health insurance counselor' may be liable" under the Code) (citing *Liberty Mut. Ins. Co. v. Garrison Contractors*, 966 S.W.2d 482 (Tex. 1998)).  That authorization, however, is limited.  Courts have repeatedly found that there is no reasonable basis to predict recovery against an agent or adjuster where the plaintiff "fails to allege facts *specifically* attributable" to the employee and distinct from the conduct of the insurer.  *See TnT Gaming Cntr. LLC v. Am. Specialty Ins. & Risk Serv., Inc.*, 759 F.Supp. 3d 742, 752 (N.D. Tex. 2024) (citing *Baird v. Sullivan*, No. 1:18-CV-357, 2019 WL 13210549, at *7 (E.D. Tex. Mar. 27, 2019) (Crone, J.) (collecting cases)).  Instead, to state a viable claim, a plaintiff must allege that the agent "*personally* took some action that violated the Insurance Code." *Trichel v. Liberty Mutual Ins. Co*, No. 3:10-CV-1914, 2011 WL 13233496, at *3 (N.D. Tex. Jan. 6, 2011) (Toliver, J.) (citations omitted) (emphasis added).

Here, Plaintiffs fail to meet this standard.  In support of its claims under the Texas Insurance Code and DTPA the petition again asserts broad allegations against the "Defendants" collectively without identifying any conduct specifically attributable to Com-Co.  Doc. 1-1, ¶¶ 18-24.  For example, Plaintiffs allege that:

Defendants violated Chapter 541 of the Texas Insurance Code by:
- Misrepresenting material facts or policy provisions relating to coverage.
- Failing to effectuate a prompt, fair, and equitable settlement of the Plaintiffs' claim.
- Failing to provide a reasonable explanation for the denial of the claim[; and]

- Refusing to pay the claim without conducting a reasonable investigation.

Doc. 1-1, ¶¶ 19-20.  Likewise, in asserting a claim under the Code's prompt payment statute, Plaintiffs allege only that "Defendants failed to pay the claim within the statutory period as required by Chapter 452 of the Texas Insurance Code."  Doc. 1-1, ¶ 22.  Nothing in either of these allegations allows the Court to differentiate between the individual actions, if any, of Cambridge and Com-Co.

Nor do the factual allegations elsewhere in the petition identify any conduct by Com-Co that could plausibly support any of these enumerated allegations.  To the contrary, the complaint concedes that neither Plaintiff William Wolf nor his spouse "have ever communicated with anyone associated with [Com-Co]," and that they "don't know what [Com-Co's] involvement may have been" in the transaction, "including what it was paid and, if so, by whom."  Doc. 1-1, ¶ 9(f).  The only conduct specifically attributable to Com-Co consists of conclusory assertions that it engaged in deceptive trade practices by making generalized promises of fairness, diligence, and customer service on its website.  Doc. 1-1, ¶ 9(f).  However, such vague statements, untethered to any alleged reliance by Plaintiffs, are insufficient to state a claim against Com-Co under either the Texas Insurance Code or the DPTA.  See *Phenix De Tejas, Inc. v. Sentinel Ins. Co.*, No. 5:24-CV-1112, 2025 WL 1243912, at *5 (W.D. Tex. Apr. 29, 2025) (Pulliam, J.) ("By failing to allege reliance, Plaintiff fails to state a claim under § 541.060(a)(1) and § 17.46.") (internal quotations and citation omitted).

Com-Co's only involvement in the insurance dispute thus appears to be limited to the fact that it was listed on the Policy as the insured's agent and was copied on certain correspondence from Cambridge's adjuster during the investigation into Plaintiffs' clam.  Doc. 1-1, ¶ 9(c)-(f).  But in the absence of any affirmative representation or erroneous policy interpretation, these

14

facts, without more, are insufficient to give rise to individual liability against Com-Co.  *See, e.g., Ford v. Property & Cas. Ins. Co. of Hartford,* No. 9-1731, 2009 WL 4825222, *3 (S.D. Tex. 2009) (Miller, J.) (holding that the complaint failed to state a valid claim under the Texas Insurance Code where the only allegation against the insurance adjuster was that he was assigned to plaintiff's claim); *Baird*, 2019 WL 13210549, at *7 (holding that allegations were insufficient to state a claim for unfair settlement practices where the petition referred to the adjuster defendants "as agents or representatives" of the insurer but failed to distinguish their conduct); *but see Up North Plastics, Inc. v. AIG Ins. Co.*,  2004 WL 1418792 (N.D. Tex. 2004) (Kaplan, J.) (holding plaintiffs stated valid Texas Insurance misrepresentation claim against nondiverse agent of insurer where the petition specifically alleged that the agent made a misrepresentation about the coverage which proved to be false).

Accordingly, the Court cannot find any reasonable basis to predict that Plaintiffs might be able to recover against Com-Co under either the Texas Insurance Code or DTPA.

### iv. Licensure Allegation

In their Second Motion to Remand, Plaintiffs additionally argue that the fact that Com-Co "purported to be Plaintiffs' insurance agent" despite not being "a licensed insurance agent in Texas" provides a reasonable basis for recovery.  Doc. 29, ¶ 13.  Although this allegation appears in the petition, *see* Doc. 1-1, ¶ 6, Plaintiffs do not identify which, if any, of their claims it is intended to support.  Without a clear connection to a specific cause of action, the mere allegation of unlicensed status does not provide a reasonable basis for recovery.  *See Griggs*, 181 F.3d at 701 (holding that a valid state-law cause of action requires a "factual fit between the plaintiffs' allegation and the pleaded theory of recovery").  Accordingly, even accepting this allegation as true, it is alone is insufficient to sustain any claim against Com-Co.

While Com-Co bears a heavy burden to prove that there is no reasonable basis for predicting Plaintiffs' recovery against it in state court, the Court concludes that Defendants have met that burden.  Because the petition alleges insufficient facts to support a plausible cause of action against Com-Co under either Texas or Illinois law, the Court concludes that Com-Co was improperly joined in this action.  Com-Co should therefore be dismissed from this action and its citizenship disregarded.  As complete diversity exists among the remaining parties, *Plaintiff's Second Motion to Remand,* Doc. 29, should be **DENIED.**

## III. DEFENDANTS' MOTION TO DISMISS, OR TRANSFER VENUE

Having found that the exercise of jurisdiction over this action is proper, the Court turns to Defendants' motion to dismiss for lack of personal jurisdiction, or alternatively to transfer venue to the Northern District of Illinois.  Doc. 8.  Because the Court concludes that transfer would cure any jurisdictional defect, it need not resolve whether it has personal jurisdiction over Cambridge.

### A. Applicable Law

"Where a court finds it lacks personal jurisdiction, it may dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(2)." *Herman v. Cataphora, Inc.*, 730 F.3d 460, 466 (5th Cir. 2013).  Alternatively, 28 U.S.C. § 1406(a) authorizes a federal court to transfer the action to "any district or division in which it could have been brought" if the court finds that the transfer is "in the interest of justice." *Id.*

Because Plaintiff's choice of forum is entitled to some weight in the transfer analysis, the movant must show "good cause" in order to obtain a transfer. *Humble Oil & Ref. Co. v. Bell Marine Serv. Inc.*, 321 F. 2d 53, 56 (5th Cir. 1963).  In assessing whether a movant has met this burden, the court must weigh a series of non-exhaustive private and public interest factors, none

of which are given dispositive weight. *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc).  When "the balancing of [the] private and public interest factors, along with any other factors that the court considers relevant, demonstrates that the alternative venue is "'clearly more convenient,'" a motion to transfer should be granted. *LeBlanc v. C.R. England, Inc.*, 961 F.Supp. 2d 819, 831 (N.D. Tex. 2013) (Boyle, J.) (citing *Volkswagen*, 545 F.3d at 315)).  Conversely, when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be honored. *Volkswagen*, 545 F.3d at 315.  In all cases, the decision to transfer venue is "committed to the sound discretion of the transferring judge." *Jarvis Christian Coll. v. Exxon Corp.*, 845 F.2d 523, 528 (5th Cir. 1988).

## A. Analysis

The parties do not dispute that Plaintiffs' action could have originally been brought in the U.S. District Court for the Northern District of Illinois.  *See* Doc. 9, ¶ 34; Doc. 28, ¶ 42; *see also* 28 U.S.C. § 1391(b)(2) (venue is proper in a district in which a "substantial part of the events or omissions giving rise to the claim occurred").  Thus, the sole issue is whether the public and private interest factors weigh in favor of transfer.

### 1. Private Interest Factors

The private interest factors relevant to this analysis include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Clarke*, 94 F.4th 502, 509 (5th Cir. 2024).  Applied here, each of these factors weigh in favor of transfer.

First, it is undisputed that the damaged property at the center of this dispute is in the Northern District of Illinois.  Doc. 9, ¶ 36; Doc. 28, ¶ 42; Doc. 1-1, ¶ 6.  Defendants argue that

17

this fact favors transfer because evidence concerning the condition of the property and the post-loss inspection is most readily ascertainable where the property is situated.  Doc. 9, ¶ 36; *see BR Tank, LLC v. Holcim (US) Inc.*, 2009 WL 3831379, at *3 (S.D. Tex. Nov. 12, 2009) (finding factors favored transfer where issues related to the physical condition of the property could most easily be evaluated in the district where the property was located).  Plaintiffs counter by emphasizing that the Policy was "marketed, sold, and serviced through communications directed into Texas and from Texas."  Doc. 28, ¶ 43.  Even accepting this characterization, however, Texas's connection to the dispute is limited to the location of one contracting party, Plaintiff William Wolf, at the time the Policy was negotiated, executed, and later disputed.  While some documentary evidence relating to Plaintiffs' breach of contract claim may exist in Texas, Plaintiffs' remaining claims arise from Cambridge's post-loss investigation and inspection— conduct that undisputedly occurred in Illinois.  Doc. 1-1, ¶ 9(l)-(p).  Aside from their own documents, Plaintiffs identify no Texas-based sources of proof related to the loss or Cambridge's handling of the claim.  Accordingly, because the conduct giving rise to Plaintiffs' claims occurred primarily in Illinois, the relative ease of access to sources of proof weighs in favor of transfer.

Second, Cambridge identifies three non-party witnesses who reside and work in Illinois: the independent adjuster assigned to investigate the loss, a consultant retained to determine the cause of the plumbing failure, and the contractor hired to remediate the water damage at the property.  Doc. 9, ¶ 37.  Plaintiffs respond by identifying other "key witnesses" who reside in Texas, including Plaintiff Wolf, his spouse, his personal assistant, and an independent investigator retained by Plaintiffs.  Doc. 28, ¶ 43.  As Defendants note, however, three of these witnesses are parties or are closely affiliated with a party and thus do not implicate compulsory

process concerns.  Doc. 32, ¶ 25.  Because the Illinois court would have subpoena power over a greater number of material non-party witnesses, this factor also weighs in favor of transfer.  *See Clark*, No. 3:19-CV-00097-L-BH, 2019 WL 3006545, at *3. (Ramirez, J.) (holding that "[i]n the context of a § 1404(a) motion, this factor "favors transfer when a transferee district has absolute subpoena power over a greater number of non-party witnesses.").

Moreover, although transfer may increase travel costs for Plaintiffs' willing witnesses, Cambridge would likewise incur travel expenses for any of its Massachusetts-based employees required to appear in either forum.  To the extent this consideration is neutral, it is outweighed by the overall efficiency and reduced cost in adjudicating this dispute in the district where the insured property is located, where the alleged loss occurred, and where key non-party witnesses and evidence are concentrated.  *See Louisiana ex rel. Tureau v. BEPCO*, L.P., No. 17-1198, 2018 WL 3581126, at *5 (M.D. La. July 2, 2018), *rep. & rec. adopted*, 2018 WL 3579474 (M.D. La. July 25, 2018) (finding private interest factors favored transfer where property at issue was located in the transferee venue); *Copeland v. Centerpoint Energy, Inc.*, No. 3:17-CV-61, 2017 WL 7796187, at *2 (S.D. Tex. Sept. 27, 2017) (holding ease of access favored transfer to division where the injury occurred and where relevant records were located).

Accordingly, the private interest factors strongly favor transfer.

### 2. Public Interest Factors

For many of the reasons already set forth, the public interest factors also weigh in favor of transfer.  The public interest factors to be considered in the convenience analysis include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern

19

the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Volkswagen*, 545 F.3d at 315.

Because the parties neither argue nor provide any evidence of the administrative congestion in either Court, the first factor is neutral. As to the second factor, local interests generally favor transfer to the venue "where the acts giving rise to the lawsuit occurred." *Van Rooyen v. Greystone Home Builders, LLC*, 295 F.Supp.3d 735, 748 (N.D. Tex. Mar. 14, 2018) (citations omitted). Although aspects of the contract's formation occurred outside Illinois, courts consistently recognize that when a contract relates to real property, the location of that property drives the local-interest analysis. *See Mhsh Holdings, LLC v. Certain UWs at Lloyd's/MSF Pritchard Syndicate*, No. 3:20-CV-3354 , 2020 WL 7056316, at * 2 (N.D. Tex. Dec. 2, 2020) (Starr, J.) (holding that local interests favored the forum where the insured property was located); *Van Rooyen v. Greystone Home Builders*, LLC, 295 F.Supp. 3d 735, 748 (N.D. Tex. 2018) (holding that local interests favored Texas district where the note at issue related to Texas property, notwithstanding that the note was executed and allegedly breached in Michigan); *Stellar Restoration Servs., LLC v. James Christopher Courtney*, 533 F.Supp.3d 394, 428 (finding local interests favored transfer to the forum where the real property was located and where contractual performance was to occur, despite the defendant's status as a Texas entity). Moreover, because Plaintiffs' extra-contractual claims stem from Defendants' investigation and handling of the claim–wrongful actions which also occurred in Illinois—the local interest also favors transfer of these claims. *See, e.g., Infinity Investors, Ltd. v. Subramaniam*, No. 97-CV-1703-G, 1998 WL 47602, at *3 (N.D. Tex. 1998) (Fish, J.) (holding that Massachusetts was the proper venue because that is where the defendant conducted his allegedly fraudulent activities).

Finally, Cambridge contends that the remaining public interest factors favor transfer because "there is a substantial likelihood that Illinois law will govern some, if not all of Plaintiffs' claims."  Doc. 9, ¶ 42.  Although the Policy does not contain an explicit choice-of-law provision, it includes several pages of Illinois-specific notices and endorsements.  *See* Doc. 9-3 at 12-15, 31; *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (noting that the presence of a forum selection clause is "a significant factor that figures centrally in the district court's calculus.").  Cambridge argues that the inclusion of these state-specific terms reflects the parties' intent for the Policy to be consistent with, and adhere to, the laws of Illinois.  Doc. 9, ¶ 31.  According to Cambridge, this intent is reinforced by its denial letter which, consistent with Illinois law, explicitly advised Plaintiffs of the availability of the Illinois Department of Justice for complaints arising from Cambridge's claim handling or coverage determination.  *See* 50 Ill. Admin. Code § 919.50; Doc. 9, ¶ 31 (citing Doc. 9-4, at 7).

In diversity cases, federal courts must apply the choice-of-law rules of the state in which they sit.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  Therefore, the Court looks to Texas's choice-of-law rules.  In deciding choice of law issues, Texas Courts use the Second Restatement of Conflict of Laws' "most significant relationship" test.  *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 727 (5th Cir. 2003) (citation omitted).  Section 6 of the Restatement provides, in relevant part:

    (1) A court, subject to constitutional restrictions, will follow a statutory     directive of its own state on choice of law;

    (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include:

***

    (b)  The needs of the interstate and international systems;
    (c)  The relevant policies of the forum;
    (d)  The relevant policies of other interested states and the relative interest of those states in the determination of the particular issue;

21

(e)  The protection of justified expectations;
(f)  The basic policies underlying the particular field of law;
(g)  Certainty, predictability, and uniformity of result; and
(h)  Ease in the determination and application of the law to be applied.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6 (AM. L. INST. 1971).

Here, despite the Policy's references to Illinois law, Plaintiffs argue that Article 21.42 of the Texas Insurance Code constitutes a statutory directive, *see* Section 1 above, requiring the application of Texas law to this dispute.  Doc. 28 at 5-6, 16.  Article 21.42 states in pertinent part that:

> Any contract of insurance payable to any citizen or inhabitant of this State by any insurance company or corporation doing business within the state shall be held to be a contract made and entered into under and by virtue of the laws of this State relating to insurance, and governed thereby[.]

Texas Ins. Code Ann. Art. 21.42.  Notwithstanding its broad language, the Texas Supreme Court has construed this provision narrowly.  *Theiler v. United Fin. Cas. Co.*, No. 4:22-V-924, 2023 WL 2898437, at *2 (S.D. Tex. Apr. 10, 2023) (Hoyt, J.) (citing *Austin Bldg. Co. v. Nat'l Union Fire Ins. Co.*, 432 S.W.2d 697, 701 (Tex. 1968)).  Under the Texas Supreme Court's reading, Article 21.42 requires the application of Texas law to contracts made between Texas citizens and insurance companies doing business in Texas "*when and only when* those contracts are made in the course of the company's Texas business."  *Howell v. Am. Live Stock Ins. Co.*, 483 F.2d 1354, 1359 (5th Cir. 1973) (emphasis in original) (citing *Austin*, 432 S.W.2d at 701).

Here, the parties do not appear to dispute that the insurance policy at issue was payable to a Texas citizen.  Doc. 28 at 4-5; Doc. 32 at 9-11.  Thus, the applicability of Texas law hinges on whether the contract was "made in the course of [Cambridge's] Texas business."  *Howell*, 483 F.2d at 1359.  In making this determination, courts have held that the proper focus is on where the contract was made and executed.  *See In re VarTec Telecom, Inc.*, No. 7-2056, 2007 WL

2142499, at \*3 (Bankr.N.D. Tex. July 23, 3007) (Boyle, J.) (interpreting *Howell* to require this analysis); *Jones v. Francis Drilling Fluids*, 2008 WL 5158268, at \*5 (S.D. Tex. Dec. 9, 2008) (Rosenthal, J.) (same).

Cambridge contends that the contract was issued either in the course of its Massachusetts or Illinois business because it was "made and executed" in Massachusetts and insured Illinois property. Doc. 32, ¶ 35. Cambridge cites *Austin* and *Howell* as clearly proscribing this result. Doc. 32, ¶ 35. The Court, however, notes several discrepancies between the facts of those cases and the facts that have been alleged here. In *Austin*, the Texas Supreme Court held that Kansas law, rather than Texas law, governed an insurance contract that was made and executed in Kansas and covered property located in Kansas. 432 S.W.2d at 701. However, in reaching this result the Court emphasized that because both the plaintiff and the defendant's agent "contracted in Kansas with virtually every aspect of the policy," there was a presumption that the parties "intended Kansas law to control." *Id.* Similarly, in *Howell*, the Court of Appeals for the Fifth Circuit held that Article 21.42 did not apply to an insurance contract made and executed in New Mexico and that covered New Mexico property. 483 F.2d at 1361. The Court explained that, under these circumstances, it was "fair to assume . . . that the parties intended New Mexico law to apply." *Id.*

Although the parties do not dispute that the Policy covered Illinois property, the issue of where the contract was made and executed is less than clear. Cambridge asserts that the place of contracting is in Massachusetts because the Policy was "issued and mailed from [it's] home office in Andover, Massachusetts." Doc. 9, ¶ 49. But, while a contract may be deemed to be made at the insurer's domicile when "delivery of the policy is unconditional," *New York Life Ins. Co. v. Baum*, 700 F.2d 928, 932 (5th Cir. 1983), Cambridge neither alleges nor provides any

facts showing that the delivery was unconditional here.  Doc. 9, ¶ 49.  Likewise, Plaintiffs'

contention that the Policy was "marketed, sold, and serviced through communications directed

into Texas and from Texas" is similarly lacking in factual support.  Doc. 28, ¶ 43.

On this record, the Court lacks sufficient facts at this stage to definitively determine

whether Article 21.42 applies.  Indeed, as at least one court has observed, "the applicability of

Article 21.42 is a sticky thicket that requires a fact-laden analysis."  *Texas Auto Capital, LLC v.*

*Dairyland Cnty. Mutual Ins. Co of Tx*, No. 4:24-CV-734, 2025 WL 744456, at *10 (E.D. Tex.

Mar. 7, 2025) (Mazzant, J.).  Because the Court does not endeavor to undertake such a fact-

intensive inquiry on a less than full record, it suffices at this stage to conclude that Plaintiffs'

Insurance Code claims may not be governed by Texas law.  *See id.*

As for Plaintiffs' common-law claims, Illinois law appears to have the most significant

relationship to the events giving rise to the injury.  *See Fearrington v. Boston Sci. Corp.*, 410 F.

Supp. 3d 794, 800 (S.D. Tex. 2019) (citing *Scottsdale Ins. Co. v. Nat'l Emergency Servs., Inc.*,

175 S.W.3d 284, 291 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) ("Texas law requires a

claim-by-claim choice of law analysis.").  Plaintiffs, however, do not directly address what law

should apply to their common-law claims and the factual record remains underdeveloped.

Accordingly, the Court declines to definitively decide this issue, though it appears at this stage

that Illinois law is more likely to govern these claims than Texas law.  Assuming, without

deciding, that Illinois law may apply to at least some of Plaintiffs' claims, the Court concludes

that the third public interest factor is either neutral or slightly favor of transfer.  *See Overson v.*

*Berryman Prods*, 461 F.Supp. 2d 537, 541 (E.D. Tex. 2006) (finding the public interest factors

favored transfer to Arizona where there was "a substantial likelihood that Arizona law would

apply to some, if not all, of Plaintiffs' claims.").

Moreover, the Court concludes that both this Court and the Northern District of Illinois are equally capable of resolving any conflict-of law issues that may arise. Even so, it may be more desirable for a federal court in the proposed transferee district to interpret an insurance contract covering property in that state, particularly where, as here, the Policy includes Illinois-specific notices and endorsements. *See Vaughn v. Am. Basketball Ass'n*, 419 F.Supp. 1274, (S.D.N.Y. 1976) (noting the desirability of having a federal judge in the transferee district interpret a contract made in that state, especially where its terms provide that it is to be interpreted in accordance with that state's law) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 644-46 (1964)). Accordingly, this factor is neutral or weighs lightly in favor of transfer.

Ultimately, while the public interest factors alone do not decisively favor transfer, the private interest factors, particularly the location of the property, evidence, and key-non party witnesses, strongly favor transfer. When considered together, the Court concludes that Cambridge has met its burden of showing "good cause" for the transfer. *See, e.g., Texas Auto Capital,* 2025 WL 744456, at \*10 (holding that the balance of factors was sufficient to meet the "good cause" standard for transfer where the private interest factors strongly favored transfer and the public interest factors were neutral). Accordingly, because Cambridge has shown that the Northern District of Illinois is clearly the more convenient forum for adjudicating this dispute, the Court should exercise its discretion to transfer the case. *Volkswagen*, 545 F.3d at 315. As the property at issue is located in Cook County, Illinois, the case should be transferred to the Eastern Division of the Northern District of Illinois. 28 U.S.C. § 93(a)(1).

## II. CONCLUSION

For the reasons set forth above, *Plaintiff's Second Motion to Remand*, 29, should be **DENIED** and all claims against Com-Co should be **DISMISSED** without Prejudice.

Additionally, Defendants' *Motion to Dismiss for Lack of Personal Jurisdiction or, Alternatively, to Transfer Venue to the Northern District of Illinois*, Doc. 8, should be **DENIED** as to dismissal, but **GRANTED** as to transfer.  Accordingly, this action should be transferred to the United States District Court for the Northern District of Illinois, Eastern Division, for further proceedings.

 **SO RECOMMENDED** on February 24, 2026

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate where in the magistrate judge's report and recommendation the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

26